# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 28, 1921.

OSCAR LESER, ET AL.,
VS.
J. MERCER GARNETT, ET AL.

*Wm. L. Marbury, George Arnold Frick, Everett P. Wheeler* and *Thos. F. Cadwalader* for petitioners.

*Lindsay C. Spencer*, Assistant Attorney General, *George Moore Brady, Roger Howell* and *Jacob M. Moses* for respondents.

HEUISLER, J.—

The petitioners in the above case being citizens, voters and taxpayers of the State of Maryland, and members of the Board of Managers of the Maryland League for State Defense, "organized to oppose, by all lawful means, the ratification by the General Assembly of Maryland of the Woman Suffrage Amendment thereby to preserve for the people of Maryland the right which they have possessed since colonial days to determine for themselves who shall be entitled to vote at their own elections, and thus preserve the essential feature of the sacred right of local government," in their petition filed in this case, for relief pray, "that the names of Cecilia Street Waters and Mary D. Randolph be struck from the registry of voters of the Seventh Precinct of the Eleventh Ward of Baltimore City, as persons disqualified to vote."

These two names were on said registry books by virtue of the provisions of an amendment to the Constitution of the United States, known as the Nineteenth Amendment, which reads as follows:

"Sec. 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State *on account of sex.*

"Sec. 2. The Congress shall have power to enforce this Article by appropriate legislation."

The object of the petition is to test the validity of the Nineteenth Amendment, the Maryland Constitution expressly limiting the right of suffrage to males—and the following reasons are assigned:

1. The said alleged amendment to the United States Constitution is not such an amendment as the Congress is authorized by Article 5 of the Constitution of the United States to propose to the legislatures of the several States to be by them ratified in accordance with said Article 5, *but is wholly outside of the scope and purpose of the amending power conferred upon Congress,* subject to ratification by three-fourths of the State Legislatures, by the said Article;" and,

2. "That the said alleged Nineteenth Amendment to the Constitution of the United States was never in fact ratified by the legislatures of three-fourths of the States, now composing the United States of America, the proclamation dated August 26, 1920, by the Honorable Bainbridge Colby, Secretary of State of the United States to the contrary notwithstanding."

At the outset of this opinion—the court desires to repeat the statement made in the brief submitted by counsel for Caroline Roberts et al.; "the expediency or wisdom of extending the franchise to women; whether as a matter of fact the vote was desired by the women of the country as a whole; the fact that by the amendment a large class of women of undesirable character and race are enfranchised; and other similar questions are all foreign to this case. The only question at issue is as to the validity or invalidity of the Nineteenth Amendment."

To evidence and exhibits in evidence, tending to show the facts set out in the *second reason,* objection was made that same was incompetent, irrelevant and improper, because this court cannot and should not make such enquiry,—and by reference to and examination of legislative proceedings and Journals of the States of West

Virginia and Tennessee,—ascertain and determine the fact whether or not those States have failed to ratify the Amendment.

The determination of the validity of ratification of Constitutional Amendments is a judicial function. Full faith and credit must be given to all legislative acts—but that means "the same and no more, to which they are entitled in the State whose acts they are."

2. Tucker on Constitution 626.

These legislative acts of West Virginia and Tennessee as to their validity have not been determined by the exercise of any local judicial function. The courts of those States had the right to go behind the certificates, and if they do not or will not do so, any sister State has the same right. The evidence is legally admissible; its probative value and bearing on this proceeding, or its control and explanation of the other evidence submited by the respondents is another and different thing. Under the circumstances of this proceeding it seems manifestly proper and necessary to complete and fill out the record—so that further examination and ultimate adjudication may have access to and the benefit of all the evidence.

The fundamental question is set out clearly in the first reason: "That it is not such an amendment as the Congress is authorized by Article 5 of the Constitution of the United States to propose to the legislatures of the several States to be by them ratified in accordance with said Article 5, but is *wholly outside the scope and purpose of the amending power conferred upon Congress*, subject to ratification, etc.

Article 5 reads as follows:

"The Congress, whenever two-thirds of both Houses shall deem it necessary, *shall propose amendments to this Constitution*, which in either case, shall be valid to all intents and purposes as part of this Constitution, when ratified by the legislatures of three-fourths of the several States or by conventions in three-fourths thereof, as one or the other mode of ratification may be proposed by the Congress; provided, that no amendment which may be made prior to the year 1808 shall

in any manner affect the first and fourth clauses in the ninth section of the first Article; *and that no State, without its consent, shall be deprived of its equal suffrage in the Senate.*"

This Article was one of the seven Articles which made up the original Constitution,—and which was ratified in convention by unanimous consent of twelve States present (Maryland being one) on September 17, 1787.

This Constitution was preceded by the following formal, solemn and well considered preamble:

"We, the people of the United States, in order to form a more perfect Union, establish Justice, insure Domestic Tranquility, provide for the common Defence, promote the general welfare, and secure the Blessings of Liberty—to ourselves and our Posterity—do ordain and establish this Constitution for the United States of America."

By this Constitution, in accepted form, the Sovereign People of America spoke—and, in Article 5, the same people reserved the power to themselves, through the Congress, *to propose Amendments to this Constitution*, subject to the two provisos in said Article set out: (a) "that no amendment which may be made prior to the year 1808 shall in any manner affect the First and Fourth clauses in the Ninth Section of the First Article;" and (b) "that no State, without its consent, shall be deprived of its equal suffrage in the Senate," and, in the same Article they set out the manner in which any proposed amendments, through Congress, should be acted on by that Congress and the State Legislatures, to validate the amendment.

Two years and eight days thereafter—the first Congress, on September 25, 1789, proposed the first Ten Amendments to the Legislatures of the several States—and they were ratified by eleven States (Maryland responding quickly on December 19, 1789)—the Congressional Journal showing no action by Connecticut, Georgia and Massachusetts. These Ten Amendments constitute *the National Bill of Rights.* They provide for—freedom of religion, speech and press; the right of the people of a free state to keep and bear arms; the quartering of

United States soldiers; the right of the people against unreasonable search and seizure; the right to answer only on presentment or indictment—the right of jeopardy and right of testimony—the right of life, liberty and property and the security of private property against public use; the right to speedy, public and jury trial and confrontation of witnesses; the right of trial by jury in civil cases; the right of protection against excessive bail or fines and cruel or unusual punishments—and finally, in Articles 9 and 10, the right to insist "that the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people;" and that " the powers not delegated to the United States by the Constitution nor prohibited by it to the States are reserved to the States respectively, or to the people."

This Bill of Rights is called in the preamble to the Ten Articles, "Articles in addition to and amendment of the Constitution of the United States of America—Proposed by Congress and ratified by the legislatures of the several States, *pursuant to the Fifth Article* of the original Constitution."

They were submitted to the States during a period of more than two years after Article 5 had been adopted; their pronouncement of rights is so searching and detailed; and the life, liberty and property of the sovereign people, and "the essential features of local government"—and all the rights that flow therefrom—are so earnestly ascertained and jealously safeguarded,—that the conclusion is irresistible that the Article 5 was the subject of much earnest, honest, intelligent and painstaking examination and study upon the part of the founders of the Government and their advisers—and they knew that Article and what it meant—and *they let it stand unchanged*, reserving in the provisos all they desired to reserve, and that was, (1) the right of any of the States to admit immigrants for a certain period of time, without the let or hindrance of Congress, except a slight per capita tax not exceeding ten dollars; and, (2) no capitation or other direct tax to be made unless in proportion to a certain census or enumeration, these two being

the invitation to the world to come to the possibilities and blessings of the New Republic and absolutely beyond amendment prior to the year 1808. The other proviso of Article 5, unchanged from the beginning, declared "*that no State without its consent should be deprived of its equal suffrage in the Senate.*"

What these words meant in 1787 they meant in 1789—and they have no different meaning now;—*no amendment, without her consent*, can deprive Delaware of her two United States Senators. and, *no amendment without the consent of all the other States*, can give more than two to Texas or New York.

This court is of opinion that the power of amendment to the Federal Constitution is substantially unlimited, and agrees with Tucker, "that the only limitation upon the amending power is that with respect to equal suffrage in the Senate"; Tucker, Constitution of the United States, Vol. 1, 397-399, and is of opinion that the words—"equal suffrage in the Senate," has no meaning but the one above set out.

To resume and conclude this Court is of opinion—*that the power to amend* the Constitution of the United States granted by the Fifth Article thereof, *is without limit, except as to the words* "equal suffrage in the Senate"; and those words have no other meaning than that hereinbefore announced; that by no implication can you read a limit to that power;—and that the aforesaid Nineteenth Amendment does not in any way violate the guarantee contained in Sec. 4, Article 4, of the said Constitution, which provides that "the United States shall guarantee to every State in this Union a republican form of government, etc."

The court is further of the opinion from all the exhibits and other evidence submitted that there was due, legal and proper ratification of the amendment by the required number of State Legislatures.

Accordingly all the instructions submitted will be refused, and an order signed dismissing the petition, with costs.